# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
NOV 04 2019

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Alcatel cellular phone<br>Seized as FP&F No. 2020565500006401<br>IMEI No. 05163000450501<br>("Target Device") | Case No. **19MJ4887** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Transportation of Illegal Aliens (a)(1)(A)(ii) |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __11/04/2019__

*Judge's signature*

City and state: San Diego, California

The Honorable Allison H. Goddard, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> Black Alcatel cellular phone
> Seized as FP&F No. 2020565500006401
> IMEI No. 05163000450501
> ("**Target Device**")

the "**Target Device(s)**", as further described in Attachment(s) A, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant(s) relate(s) to the investigation and prosecution of David YERO-Garces for smuggling illegal aliens from Mexico into the United States. The **Target Device(s)** is/are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant(s) and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2008, and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten

1

years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point

operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On November 3, 2019, Border Patrol Agent Z. Jones was conducting assigned duties in the Campo Border Patrol Station's area of responsibility. At approximately 8:20 AM, Agent Jones responded to a seismic intrusion device activation located near Moon Valley Road where he found several shoe prints across the road. Agent Jones followed the shoe prints and after conducting an extensive search he was only able to determine that the group was at an unknown location, south of Moon Valley Road.

12. At approximately 12:10 PM, Agent Jones was traveling westbound on Moon Valley Road when he encountered a 1997 maroon Ford Expedition traveling eastbound. Agent Jones noticed the Expedition was not bearing a front license plate and that both

driver and passenger were continuously looking back towards the back seat as if they were talking to someone. As the Expedition was driving past Agent Jones' location, Agent Jones observed several individuals laying supine in the back seat.

13. Agent Jones followed the Expedition and conducted a vehicle stop. The vehicle was not bearing a rear license plate either. Agent Jones approached the driver side door and identified himself as a Border Patrol Agent and questioned both driver and passenger as to their citizenships. The driver, later identified as defendant #1, David YERO-Garces, stated he is a Cuban national and bearer of a Legal Permanent Resident card. The passenger (who was wearing a construction reflector vest), later identified as defendant #2, Ana Silvia GUTIERREZ-Lucero, stated she is a naturalized United States citizen.

14. As Agent Jones was questioning YERO and GUTIERREZ, he observed three individuals lying in the back seat, each of them wearing a construction reflector vest and slouching down. Agent Jones opened the rear driver side door, ordered the individuals, later identified as material witnesses Diego CRUZ-Matuz, Carlos Fabian GUTIERREZ-Martinez and Taurino LOPEZ-Orocio to not move and conducted an immigration inspection. CRUZ, GUTIERREZ and LOPEZ stated they are citizens of Mexico without any immigration documents which would allow them to enter or remain in the United States legally. At approximately 12:14 PM, Agent Jones placed CRUZ, GUTIERREZ and LOPEZ under arrest for being illegally present in the United States as well as David YERO-Garces and Ana Silvia GUTIERREZ-Lucero for violation of 8 USC 1324 Alien Smuggling.

15. The defendant, Ana Silvia GUTIERREZ-Lucero was advised of her Miranda rights. GUTIERREZ stated she understood her rights and was willing to answer questions without an attorney present. Regarding the events that led to her arrest, GUTIERREZ stated that she, along with her boyfriend David, were in the area to pick up illegal aliens. GUTIERREZ stated that this was the second time they were in the area to smuggle, after having successfully picked up and dropped off a single individual in Los Angeles.

GUTIERREZ stated she was paid $300 USD for this event. GUTIERREZ stated that on this occasion, her boyfriend was given instructions on where and when to pick up the group of individuals with whom they were arrested. GUTIERREZ stated that once they arrived at the pickup location they were instructed to yell out the window. After yelling out the window, several individuals emerged from the brush. GUTIERREZ stated that the individuals entered the vehicle wearing carpet boot on their feet and that she provided them with reflective vests, along with instructions to lay down.

16. Material witnesses Diego CRUZ-Matuz, Carlos Fabian GUTIERREZ-Martinez, and Taurino LOPEZ-Orocio stated that they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. Material witnesses stated that they were going to pay between an unknown sum and $8,000.00 USD to be smuggled into in the United States with a destination of Los Angeles, California. Material witnesses CRUZ and GUTIERREZ stated when they arrived at the border fence, the south side coordinator placed foot coverings on their feet consisting of torn pieces of cloth that would prevent them from leaving shoe prints. CRUZ, GUTIERREZ and LOPEZ stated they were guided to where the vehicle was to pick them up. Material witnesses CRUZ, GUTIERREZ, and LOPEZ stated that a four door vehicle would arrive to their location and yell out for them. CRUZ and GUTIERREZ stated the vehicle was red in color. CRUZ and GUTIERREZ stated that a code word, "Oaxaca wolf" or "lobo", would be used to notify them that it was the vehicle arriving for them. GUTIERREZ and LOPEZ stated that the passenger Ana Silvia GUTIERREZ-Lucero instructed them to get in the vehicle. CRUZ and LOPEZ stated Ana Silvia GUTIERREZ-Lucero instructed them to remove the coverings from their feet and their jackets and hid them on the side of the road. CRUZ, GUTIERREZ, and LOPEZ stated that the passenger Ana Silvia GUTIERREZ-Lucero gave them green reflective construction vests to wear. Material witnesses CRUZ, GUTIERREZ, and LOPEZ all described the driver, defendant #1, David YERO-Garces, as a male with dark skin/ brown complexion. CRUZ, GUTIERREZ, and LOPEZ described the passenger, defendant #2, Ana Silvia

GUTIERREZ-Lucero, as a female with black curly hair. Material witness LOPEZ positively identified defendant #1, David YERO-Garces, as the driver of their smuggling vehicle. Material witnesses CRUZ, GUTIERREZ, and LOPEZ positively identified defendant #2, Ana Silvia GUTIERREZ-Lucero, as the front passenger of the vehicle.

17. David YERO-Garces' phone (**Target Device**) was subsequently seized.

18. In my training and experience, alien smugglers and transporters may be involved in the planning and coordination of alien smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Accordingly, I request permission to search the **Target Device(s)** for data beginning from **October 3, 2019 through November 4, 2019**, which was the day following the arrest.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.

1 Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

20. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owners' consent. Consent was not given.

**CONCLUSION**

21. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device(s)** will yield evidence of (YERO's) violations of Title 8, United States Code, Sections 1324.

22. Because the **Target Device(s)** was seized at the time of (YERO's) arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device(s)**. As stated above, I believe that the appropriate date range for this search is from **October 3, 2019 through November 4, 2019**.

23. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item(s) described in Attachment(s) A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Subscribed and sworn to before me this ___4th___ day of November, 2019.

Hon. Allison H. Goddard
United States Magistrate Judge

9

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

Black Alcatel cellular phone
Seized as FP&F No. 2020565500006401
IMEI No. 05163000450501
(" **Target Device**")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone(s) described in Attachment(s) A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone(s) for evidence described below. The seizure and search of the cellular telephone(s) shall follow the search methodology described in the affidavit submitted in support of the warrant(s).

The evidence to be seized from the cellular telephone(s) will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 3, 2019 through November 4, 2019:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.